1   FINESTONE HAYES LLP
    Jennifer C. Hayes (Bar No. 197252)
2   jhayes@fhlawllp.com
    456 Montgomery Street, 20th Floor
3   San Francisco, California 94104
    Telephone:    (415) 616-0466
4   Facsimile:    (415) 398-2820

5   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Anthony P. Alden (Bar No. 232220)
6   anthonyalden@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
7   Los Angeles, California  90017-2543
    Telephone:    (213) 443-3000
8   Facsimile:    (213) 443-3100

9   Attorneys for Plaintiff ResCap Liquidating Trust

10

11              UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14  RESCAP LIQUIDATING TRUST,              Case No.

15              Plaintiff,                 **COMPLAINT FOR: (1) AVOIDANCE OF**
                                           **INTENTIONAL FRAUDULENT**
16       vs.                               **TRANSFERS; (2) AVOIDANCE OF**
                                           **CONSTRUCTIVELY FRAUDULENT**
17  FIRST CALIFORNIA MORTGAGE              **TRANSFERS; (3) INTENTIONAL**
    COMPANY; CHRISTOPHER HART;             **INTERFERENCE WITH CONTRACT; (4)**
18  DENNIS HART; ELIZABETH HART-           **INTENTIONAL INTERFERENCE WITH**
    ARMSTRONG; DAVID ARMSTRONG;            **PROSPECTIVE ECONOMIC**
19  SEAGULL SERVICES, LLC; FIRST           **ADVANTAGE; (5) NEGLIGENT**
    CALIFORNIA LENDING SOLUTIONS;          **INTERFERENCE WITH PROSPECTIVE**
20  HART FAMILY FOUNDATION; D.M.H.         **ECONOMIC ADVANTAGE; AND (6)**
    FAMILY LIMITED PARTNERSHIP; and        **CONVERSION**
21  TIVOLI ASSET MANAGEMENT, INC.,
                                           **DEMAND FOR JURY TRIAL**
22              Defendants.

23

24

25

26

27

28

Plaintiff ResCap Liquidating Trust (the "Trust" or "Plaintiff") alleges:

**SUMMARY OF ACTION**

1.     This action arises out of a scheme by the individual Defendants to induce Plaintiff to enter into a settlement agreement resolving Plaintiff's lawsuit against their company, First California Mortgage Company ("FCMC"), and then to strip FCMC of its assets for the benefit of the individual Defendants and affiliated companies (*i.e.,* the entity Defendants), leaving FCMC an empty shell unable to satisfy its settlement obligations.  The individual Defendants—members of the Hart family, who own FCMC and the affiliated Defendants—orchestrated the transfers of FCMC's assets leading up to and after having FCMC enter into the settlement agreement with Plaintiff, and then promptly shuttered FCMC's doors.  Plaintiff has now been left high and dry, while Defendants enrich themselves with FCMC's former assets.

2.     On December 13, 2013, Residential Funding Company, LLC ("RFC") filed a complaint against FCMC in the action styled, *Residential Funding Company, LLC v. First California Mortgage Company*, No. 13-CV-3453 (D. Minn.) (the "Litigation"), asserting claims for breach of contract and indemnification.  On September 23, 2016, RFC, the Trust, and FCMC entered into a Settlement and Release Agreement (the "Settlement Agreement"), pursuant to which FCMC agreed to pay $6 million to the Trust, under a payment schedule, to resolve the Litigation.  In the event FCMC defaulted under the payment schedule, FCMC was obligated to pay the Trust $7 million less than any payments already made.

3.     Unbeknownst to Plaintiff, while the Litigation was pending and even while negotiating the Settlement Agreement, the individual Defendants began transferring FCMC's assets to themselves and entities they controlled (*i.e.,* Seagull Services, LLC; First California Lending Solutions; the Hart Family Foundation; D.M.H. Family Limited Partnership; and Tivoli Asset Management, Inc.).  When FCMC failed to make the fourth required settlement payment, Plaintiff sought entry of a confessed judgment, pursuant to the Settlement Agreement.  On July 24, 2017, the Sonoma County Superior Court entered judgment in Plaintiff's favor pursuant to Confession of Judgment in the amount of $6,497,500, as well as statutory post-judgment interest until satisfied (the "Original Judgment").

4.      As part of the Hart family's scheme, FCMC requested that Plaintiff forbear on enforcing the Original Judgment, purportedly to allow them additional time to pay a lump-sum to Plaintiff from the proceeds of FCMC's allegedly imminent sale.  All the while, and unbeknownst to Plaintiff, the Hart family continued to pillage FCMC's assets.

5.      On ███████, 2017, the parties entered into an Amendment to Settlement and Release Agreement (the "Amended Settlement Agreement"), under which FCMC agreed to make a single, lump-sum payment to the Trust of ██████ on ████████ 2017 (the "Balloon Payment").  The Amended Settlement Agreement also allowed RFC and the Trust ██████ ████████████████████████████████████████████████ ████████████████ (the "Amended Judgment").  The Sonoma County Superior Court entered the Amended Judgment on September 20, 2017.

6.      Rather than make the required settlement payments as it was contractually obligated to do, from approximately June 2014 to at least March 2018, FCMC transferred at least ████████ to the individual Defendants and entities they controlled.  FCMC transferred these funds under the pretext of paying purported salaries, notes, interest, loan fees, distributions, professional fees, and subleases.  In reality, these transfers were made to hinder, delay, or defraud FCMC's creditors.  FCMC did not receive reasonably equivalent value for these transfers, and it was insolvent at the time it made the transfers or was rendered insolvent as a result of them.

7.      Promptly after failing to make the Balloon Payment to Plaintiff in November 2017, and without so much as notifying Plaintiff, FCMC shut down its operations, surrendered all of its leaseholds, wiped all of its computers remotely, and told landlords they were free to salvage anything left at the premises.

8.      The fraudulent scheme of the Hart family and FCMC has left Plaintiff with an empty shell of a company from which to collect the Amended Judgment.  As a result of the actions of FCMC and its insiders, Plaintiff has suffered damages of no less than $6,679,074.  Plaintiff now seeks to recover those damages.

COMPLAINT

**PARTIES**

9.      Plaintiff is an express Delaware statutory trust and is the successor-in-interest to certain rights of RFC, which filed for Chapter 11 bankruptcy in May 2012 and is no longer engaged in active business operations.  At the time RFC filed for bankruptcy, it was a wholly-owned subsidiary of GMAC-RFC Holding Company, LLC, which in turn was a wholly-owned subsidiary of Residential Capital, LLC.  Residential Capital, LLC was a wholly-owned subsidiary of GMAC Mortgage Group, LLC, which in turn was a wholly-owned subsidiary of Ally Financial, Inc.  On December 17, 2013, pursuant to the Second Amended Joint Chapter 11 Plan that resolved RFC's bankruptcy, GMAC Mortgage Group LLC's interest in RFC was cancelled and, in accordance with the Plan's terms, Plaintiff has now succeeded to RFC's rights and interests.

10.      Defendant FCMC is a closely-held California corporation with its former principal place of business at 1400 N. McDowell Blvd., Suite 300, Petaluma, CA 94954.  At all relevant times, FCMC was in the business of originating and selling residential mortgage loans, including selling them to RFC.  FCMC is owned, managed, and controlled by members of the Hart family, including Defendants Dennis Hart, Christopher Hart, Elizabeth Hart-Armstrong, and David Armstrong, and is an affiliate of Defendants Seagull Services, LLC, First California Lending Solutions, and Tivoli Asset Management, Inc.

11.      Plaintiff is informed and believes that Defendant Dennis Hart is the founder, former Chief Executive Officer ("CEO") and President, and a current shareholder of Defendant FCMC. Plaintiff is further informed and believes that Dennis Hart also is Defendant Seagull Services, LLC's CEO and sole member; the general partner of Defendant D.M.H. Family Limited Partnership; and a former director of Defendant Tivoli Asset Management, Inc.  Plaintiff is informed and believes that, at all relevant times, Dennis Hart has been a citizen and resident of California.

12.      Plaintiff is informed and believes that Defendant Christopher Kamin Hart is Defendant Dennis Hart's son, took over as Defendant FCMC's CEO and President upon the elder Hart's retirement, and is an FCMC shareholder.  Plaintiff is informed and believes that Christopher Hart is also Defendant First California Lending Solutions' CEO and a shareholder,

-4-

1  and the former CEO of Defendant Tivoli Asset Management, Inc.  Plaintiff is informed and

2  believes that, at all relevant times, Christopher Hart has been a citizen and resident of California.

3        13.   Plaintiff is informed and believes that Defendant Elizabeth Hart-Armstrong ("Hart-

4  Armstrong") is Defendant Dennis Hart's daughter, Defendant Christopher Hart's sister, Defendant

5  David Armstrong's wife, and the Secretary and a shareholder of Defendant FCMC.   Plaintiff is

6  further informed and believes that Hart-Armstrong is also the Secretary, Chief Financial Officer

7  ("CFO"), and a shareholder of Defendant First California Lending Solutions, and the former

8  secretary of Defendant Tivoli Asset Management, Inc.  Plaintiff is informed and believes that at all

9  times, Hart-Armstrong has been a citizen and resident of California.

10        14.   Plaintiff is informed and believes that Defendant David Armstrong is Defendant

11  Hart-Armstrong's spouse, Defendant Chris Hart's brother-in-law, and Defendant Dennis Hart's

12  son-in-law.  Plaintiff is further informed and believes that David Armstrong was the executive

13  vice president and chief operating officer of FCMC from February 2017 to February 2018, and is a

14  shareholder of FCMC.[1]

15        15.   Plaintiff is informed and believes that Defendant Seagull Services, LLC ("Seagull")

16  is a California limited liability company with its principal place of business at 1100 Larkspur

17  Landing #290, Larkspur, CA 94939.  Plaintiff is further informed and believes that Seagull is

18  owned by Defendant Dennis Hart and is an affiliate of Defendants FCMC, First California

19  Lending Solutions, and Tivoli.

20        16.   Plaintiff is informed and believes that Defendant First California Lending Solutions

21  ("FCLS") is a California corporation with its principal place of business at 1100 Larkspur Landing

22  #290, Larkspur, CA 94939.  Plaintiff is further informed and believes that FCLS is owned by

23  Defendants Christopher Hart and Armstrong-Hart and is an affiliate of Defendants FCMC,

24  Seagull, and Tivoli.

25        17.   Plaintiff is informed and believes that Defendant Hart Family Foundation is a

26  California non-profit corporation with its principal place of business at 1100 Larkspur Landing

27

28        [1]   Defendants Dennis Hart, Christopher Hart, Hart-Armstrong, and David Armstrong are
collectively referred to herein as the "Individual Defendants."

#290, Larkspur, CA 94939.  Plaintiff is further informed and believes that Defendant Hart-Armstrong is the Hart Family Foundation's CEO, Michael Hart is its Secretary, and Defendant Dennis Hart is its CFO.

18.     Plaintiff is informed and believes that Defendant D.M.H. Family Limited Partnership ("DMHFLP") is a limited partnership incorporated in the State of Nevada.  Plaintiff is further informed and believes that Defendant Dennis Hart is DMHFLP's General Partner and that it is entirely controlled by him.  Dennis Hart uses DMHFLP as an alter ego and a device to defraud creditors by diverting monies from FCMC and other Hart controlled entities to DMHFLP, which monies ultimately make their way to Dennis Hart.

19.     Plaintiff is informed and believes that Defendant Tivoli Asset Management, Inc. ("Tivoli") is a dissolved California corporation with its principal place of business at 750 Lindaro St, Ste. 240, San Rafael, CA 94901.  Plaintiff is further informed and believes that Defendant Christopher Hart was Tivoli's CEO, Defendant Hart-Armstrong was Tivoli's secretary, and Defendant Dennis Hart was a director.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over the claims presented in this Complaint under 28 U.S.C. § 1334(b) because the claims presented in this complaint are related to a pending case under Title 11 of the United States Code styled,  *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (MG).

21.     Personal jurisdiction and venue are proper in this District pursuant to 28 U.S.C. § 1391 because (a) Defendants' residences and principal places of business are located in the Counties of Marin and Sonoma, State of California, and (b) a substantial part of the events or omissions giving rise to the claims occurred in the Counties of Marin and Sonoma, State of California.

22.     "Intradistrict Assignment."  Assignment to the San Francisco Division is proper pursuant to Civil Local Rules 3-2(c) and (d), because a substantial part of the events or omissions which give rise to the claim occurred in the Counties of Marin and Sonoma, State of California.

## BACKGROUND FACTS

**A.   RFC's Business and Bankruptcy**

23.   At all relevant times prior to its bankruptcy in May 2012, RFC was in the business of acquiring residential mortgage loans from mortgage originators and selling them into residential mortgage-backed securitization ("RMBS") trusts[2] or to whole loan purchasers.

24.   Critical to RFC's business success was the quality of the loans it purchased from mortgage originators such as FCMC.  To that end, RFC typically required its correspondent lenders, including FCMC, to abide by a Client Contract and Client Guide.  These documents set out stringent loan-level contractual representations and warranties made by the correspondent lender, which were designed to protect RFC from the risks of borrower fraud, appraisal fraud, failure to comply with state and federal law, and other credit and compliance factors that could negatively impact the performance and value of the loans RFC purchased.

25.   Over the course of the parties' relationship, RFC acquired over 300 residential mortgage loans from Defendant FCMC, with an original principal balance of over $125 million, pursuant to several Client Contracts and the Client Guide.  RFC placed over 300 of these loans into RMBS trusts, which issued certificates to investors.

26.   Due in significant part to the failure of correspondent lenders, including FCMC, to honor their contractual representations and warranties concerning the loans RFC bought from them, RFC was sued by numerous counterparties and investors in its RMBS.  In May 2012, in the face of these mounting lawsuits, RFC was forced to file a Chapter 11 bankruptcy petition, which case is one of the jointly administered Chapter 11 cases pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under the caption, *In re Residential Capital, LLC, et al.*, Case No. 12-12020 (MG).

27.   On December 11, 2013, the Bankruptcy Court approved a global settlement of RFC's RMBS-related liabilities for over $10 billion in allowed claims, and confirmed the Second

---

[2]   RMBS trusts are trusts that hold residential mortgages and issue certificates to investors for which the mortgages constitute collateral.  Investors are paid by receiving a share of the payments of principal and interest made by the borrowers on the mortgage loans.

COMPLAINT

Amended Joint Chapter 11 Plan Proposed by Residential Capital LLC, *et al.* and the Official Committee of Unsecured Creditors, Case No. 12-12020 (MG) (Bankr. S.D.N.Y.) [D.I. 6065-1] (the "Plan").  Pursuant to the Plan, the Trust succeeded to certain of RFC's rights and is responsible for monetizing many of the Debtors' remaining assets and pursuing litigation claims, including RFC's rights against FCMC and other parties who sold mortgages to RFC.  The proceeds recovered by the Trust are distributed to the Debtors' creditors after the payment of costs and expenses.

**B.    RFC's Complaint Against FCMC, the Settlement, and the Judgment**

28.    On December 13, 2013, RFC filed a complaint against FCMC in the U.S. District Court for the District of Minnesota (the "District Court") in an action styled, *Residential Funding Company, LLC v. First California Mortgage Company*, No. 13-CV-3453 (D. Minn.).  RFC asserted claims for breach of contract and indemnification under the Client Contracts and Client Guide arising from FCMC's sale of defective residential mortgage loans to RFC, which RFC then placed into RMBS trusts.

29.    On September 23, 2016, after nearly three years of litigation, the parties entered into the Settlement Agreement.  Under the Settlement Agreement, FCMC agreed to pay $6 million to the Trust to resolve the Litigation, with the settlement amount to be paid in installments pursuant to a payment schedule.  The payment schedule required FCMC to make installment payments from October 10, 2016 through September 10, 2020, with the payments increasing over time.  In the event FCMC defaulted under the payment schedule, FCMC was obligated to pay the Trust $7 million less than any payments already made.  A redacted version of the Settlement Agreement is attached as **Exhibit A**.  In an abundance of caution, Plaintiff has redacted the Settlement Agreement due to confidentiality provisions within the Settlement Agreement.[3]

30.    As the managers and members of closely-held FCMC, each Individual Defendant considered and approved the Settlement Agreement.  Defendant Christopher Hart signed the Settlement Agreement as FCMC's President and CEO.  Christopher Hart and FCMC's counsel

---

[3] Plaintiff does not concede that the confidentiality provisions in the Settlement Agreement bar disclosure of the Settlement Agreement and reserves all rights.

also signed Affidavits of Confession of Judgment in the event FCMC defaulted on its payment obligations.

31.     FCMC made the first required payment under the Settlement Agreement of $83,750, the second required payment of $167,500, and the third required payment of $251,250. However, FCMC failed to make the fourth requirement payment of $251,250 as provided in Section 2(a) of the Settlement Agreement, and made no further payments.  RFC and the Trust sent a Notice of Default to FCMC as required by the Settlement Agreement, but FCMC did not cure the default.

32.     Accordingly, on July 21, 2017, RFC and the Trust properly filed the Affidavits and Declarations of Confession of Judgment, along with an affidavit by the Trust's CFO, and sought entry of a confessed judgment.  On July 24, 2017, the Sonoma County Superior Court entered judgment against FCMC and in favor of Plaintiff in the amount of $6,497,500, plus statutory post-judgment interest until satisfaction.  The Original Judgment is attached as **Exhibit B**.

33.     After entry of the Original Judgment, FCMC contacted Plaintiff and represented that it was negotiating its sale and would pay the total amount owing under the Settlement Agreement out of the sale proceeds, which would be sufficient to pay Plaintiff and FCMC's other creditors in full.  FCMC requested that Plaintiff forbear on enforcing the Original Judgment to allow FCMC additional time to pay Plaintiff a lump sum out of the proceeds of its sale.

34.     On ████████ 2017, and in reliance on FCMC's representations, RFC, the Trust, and FCMC entered into the Amended Settlement Agreement, which was approved by each Individual Defendant and signed by Defendant Christopher Hart on FCMC's behalf.  Pursuant to that Amended Agreement, FCMC agreed to make a single Balloon Payment to the Trust of ████████ on ████████ 2017.  FCMC's obligation to make the Balloon Payment ████ ███████████████████████████████████████████████.  A redacted version of the Amended Settlement Agreement is attached as **Exhibit C**.  In an abundance of caution, Plaintiff

1   has redacted the Amended Settlement Agreement due to confidentiality provisions within the

2   Amended Settlement Agreement.[4]

3        35.    In order to induce Plaintiff to enter into the Amended Settlement Agreement,

4   FCMC agreed to a number of provisions designed to protect Plaintiff's rights.

5        36.    First, in Section 2 of the Amended Settlement Agreement, FCMC specifically

6   agreed that:

14        37.    Second, in Section 3 of the Amended Settlement Agreement,

17   On October 24, 2017, Plaintiff perfected its security interest by filing with the

18   California Secretary of State a Uniform Commercial Code financing statement with respect to the

19   following assets:

> All assets of FIRST CALIFORNIA MORTGAGE COMPANY, whether
> now owned or existing, or hereafter acquired or arising, and wherever
> located, including, without limitations, all of the following assets, properties
> and interest in property of FIRST CALIFORNIA MORTGAGE
> COMPANY: all Accounts, all Equipment, all Commercial Tort Claims, all
> General Intangibles, all Chattel paper, all inventory, all Negotiable
> Collateral, all Investment Property, all Financial Assets, all Letter of Credit
> Rights, all Supporting Obligations, all Deposit Accounts, all cash or cash
> equivalents, all proceeds and products, whether tangible or intangible, of
> any of the foregoing, including proceeds of insurance covering any or all of
> the foregoing, and any and all tangible or intangible property resulting from
> the sale, lease, license or other disposition of the foregoing, or any portion

---

[4] Plaintiff does not concede that the confidentiality provisions in the Amended Settlement Agreement bar disclosure of the Amended Settlement Agreement and reserves all rights.

thereof or interest therein, and all proceeds thereof.  Notwithstanding anything to the contrary contained in this definition, the term "Collateral" shall not include any rights or interest in any assets of FIRST CALIFORNIA MORTGAGE COMPANY sold in the ordinary course of business (defined as loans originated and re-sold whereby the proceeds are utilized to pay warehouse loans), or any rights or interest in any contract or lease covering equipment or fixtures of FIRST CALIFORNIA MORTGAGE COMPANY if under the terms of such contract or lease, or applicable law with respect thereto, the valid grant of a security interest or lien therein to the ResCap Liquidating trust and/or Residential Funding Company, LLC is prohibited as a matter of law or under the terms of such contract or lease.

The UCC financing statement and filing confirmation are attached as **Exhibit D**.

38.     Third, ███████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████ The escrow instructions agreed upon by the parties are attached as **Exhibit E**.

39.     ████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████. On September 20, 2017, the Court entered the Amended Judgment against FCMC and in favor of Plaintiff in the amount of $6,497,500, plus statutory post-judgment interest until satisfaction.  The Amended Judgment is attached as **Exhibit F**. ██████████████████████████████████████████████
████████████████████████████████████████████████████
████

40.     On September 29, 2017, an Abstract of Judgment was recorded in the Official Records of Sonoma County and a Notice of Judgment Lien was filed with the California Secretary of State.  These are attached as **Exhibits G and H**, respectively.

COMPLAINT

41.     FCMC did not make the Balloon Payment on ████████ 2017.  To date, FCMC has not made any further payments on account of the settlement or the Amended Judgment.

**C.     The Fraudulent Transfers and Shut Down of FCMC**

42.     Rather than make good on its contractual obligations, Plaintiff is informed and believes that, from June 2014 through at least March 2018, FCMC transferred at least ████████ to the Individual Defendants and various entities they controlled, including Defendants Seagull, FCLS, the Hart Family Foundation, DMHFLP, and Tivoli.  FCMC transferred the monies under the pretext of paying salaries, notes, interest, loan fees, distributions, professional fees, and subleases (the "Transfers").  In reality, the Transfers were made to hinder, delay, or defraud FCMC's creditors.  The amounts, dates and parties to the Transfers are identified in the attached redacted **Exhibit I**,[5] which was provided to Plaintiff by FCMC itself and by various banks pursuant to subpoenas issued in connection with attempting to enforce the Amended Judgment. Just a few of the numerous fraudulent transfers received by the Defendants from FCMC include:

- On October 12, 2016, less than one month after entering to the Settlement, FCMC paid the Hart Family Foundation ████████.

- On November 9, 2016, less than two months after entering into the Settlement, FCMC paid the Hart Family Foundation ████████.

- On April 5, 2017, just two months before it defaulted on its payment obligations to Plaintiff under the Settlement Agreement, FCMC paid Dennis Hart ████████.

- On December 27, 2017, after it had purportedly shut down operations, FCMC paid Chris Hart ████████.

43.     Plaintiff is informed and believes that FCMC did not receive reasonably equivalent value for the Transfers.  For example, FCMC paid over ████████ to Seagull Services from June

---

[5] Exhibit I is not intended to include all possible transfers to Defendants.  For example, Plaintiff believes that FCMC paid additional amounts to Defendants in 2016 and 2017 but cannot currently determine the specific dates of those payments and whether those payments include the specific amounts listed in Exhibit I.  Plaintiff reserves all rights to amend Exhibit I to include additional transfers as it discovers them.  In an abundance of caution, Exhibit I is redacted to remove the names of the transferees and the amounts of the transfers.  Plaintiff does not concede that redaction of the transferee names and amounts is required by law and reserves all rights.

1  2014 to November 2017, for purportedly providing consulting services, a purported letter of

2  credit, and a purported fee of ██ per loan for using "████████," a software program that

3  FCMC had sold to Seagull in 2009.  Plaintiff is informed and believes that Seagull Services

4  neither provided FCMC services nor advanced any funds under a letter of credit.  Further, FCMC

5  paid Seagull several times in 2016, even though FCMC's 2016 audited financial statement

6  indicates ██████████████████████.  Similarly, FCMC made several transfers

7  to FCLS in 2016, even though FCMC's 2016 audited financial statement indicates ███████

8  ████████████.

9        44.     Further, FCMC was insolvent at the time it made the Transfers or was rendered

10 insolvent as a result of them.  FCMC was insolvent at all relevant times, given the enormous

11 liability it faced under RFC's complaint.  FCMC's 2016 audited financial statements, ██████

12 ████████████████████████████████████,

13 show ██████ in the years 2015 and 2016.  Had the $6 million settlement been booked, adjusted

14 equity for a balance sheet solvency would be approximately ██████ ████████  FCMC's

15 2014 tax return shows "Ordinary business income" of ████████, and an "Income/loss

16 reconciliation" of ██████████.

17       45.     The scheme of FCMC and its insiders only recently came to light.  Plaintiff sought

18 to enforce the Amended Judgment, by, among other things, serving a subpoena on FCMC in

19 connection with the Judgment.  In response to the subpoena, on or about March 6, 2018, FCMC's

20 counsel informed Plaintiff for the first time that—despite its outstanding contractual obligation to

21 pay Plaintiff over $6 million—FCMC had ceased operations and was in the wind-down process.

22       46.     When Plaintiff's counsel asked when FCMC ceased operations, counsel for FCMC

23 responded that he was "not aware of the exact protocols", but he believed "the out of state

24 operations were shut down first."  Plaintiff's counsel again asked when the shutdown occurred,

25 but counsel for FCMC responded that he "can't give exact dates for all locations"; loan

26 originations "ceased sometime in February of this year"; and that "[p]rior to that date, [he]

27 believe[d] that some or all of the out of state locations ceased business."  FCMC's counsel later

28 responded that he had been "advised" that FCMC took its last mortgage application on November

-13-

30, 2017; FCMC's last loans were funded on December 29, 2017; all sales and operations staff, along with some IT, compliance, legal, administrative, and marketing staff had been released; and loans were "cleared off" of FCMC's last warehouse facility in January 2018.

47.     On or about March 7, 2018, Plaintiff's counsel again spoke to FCMC's counsel, who informed Plaintiff's counsel that (unbeknownst to Plaintiff) he had been representing FCMC for over a year as bankruptcy counsel and that there were no FCMC assets left to pay the Amended Judgment.  Counsel stated that, when certain lenders learned about the Amended Judgment, they no longer wanted to lend to FCMC, and that FCMC allegedly was unable to sell its business due to the Amended Judgment.  Counsel further stated that FCMC shut down substantially all operations by December 31, 2017, and "certainly" shut down all out-of-state operations by that time.  FCMC purportedly surrendered its leaseholds by mid-January 2018, wiped all its computers remotely, and told the landlords they were free to salvage anything left at the premises.  According to its counsel, FCMC had no assets other than a claim for a refund of a security deposit on a bond, which the bonding company indicated it would keep for another year to see if any claims are brought against the bond.

48.     ██████████████████████████████████████, FCMC never sought Plaintiff's consent prior to disposing its assets in the course of shutting down its operations, and never placed the proceed from such dispositions in escrow for Plaintiff's benefit.

49.     Defendants acted with malice, oppression, or fraud in stripping FCMC of its assets for the benefit of the Defendants, leaving FCMC an empty shell unable to satisfy its settlement obligations.

## FIRST CLAIM FOR RELIEF

**Avoidance and Recovery of Intentionally Fraudulent Transfers Under Uniform Fraudulent Transfer Act, California Civil Code Sections 3439.04(a)(1) and 3439.07 (All Defendants)**

50.     Plaintiff realleges and incorporates herein the allegations of paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51.     FCMC promised Plaintiff it would pay at least $6 million pursuant to the Settlement Agreement, and that it would make the ████████ Balloon Payment pursuant to the

1   Amended Settlement Agreement.  FCMC made only the first three payments under the Settlement

2   Agreement and did not make any further payments.

3       52.   Instead, from June 2014 to at least March 2018, FCMC made the Transfers to its

4   insiders and entities controlled by its insiders, including to Defendants.  The purpose of the

5   Transfers was to siphon money out of FCMC to benefit FCMC's insiders (including Defendants)

6   at the expense of Plaintiff.

7       53.   FCMC's intent to hinder, delay, or defraud Plaintiff is evidenced by, among other

8   things:

9           (a)   FCMC made the Transfers to insider Defendants Christopher Hart, Dennis

10              Hart, Hart-Armstrong, and David Armstrong, and entities controlled by

11              those insiders, including Defendants Seagull, FCLS, the Hart Family

12              Foundation, DMHFLP, and Tivoli.

13           (b)   FCMC did not disclose and actively concealed the Transfers from Plaintiff

14              until just before it defaulted on its obligation to make the Balloon Payment.

15              In the Amended Settlement Agreement, FCMC affirmatively represented

16              that ████████████████████████████████████████

17              ████████████████████████████████████████

18              ████████████████████████████████████████

19              ████████████████████

20           (c)   FCMC made the Transfers despite the existence of perfected security

21              interests in its assets in favor of Plaintiff.

22           (d)   FCMC did not receive reasonably equivalent value in exchange for the

23              Transfers.

24           (e)   FCMC was insolvent at the time of making the Transfers or became

25              insolvent as a result of the Transfers.

26           (f)   FCMC transferred substantially all of its assets after making the bulk of the

27              Transfers.

28

COMPLAINT

(g)     FCMC ceased operations and shut down shortly after making the bulk of the Transfers.

(h)     FCMC made the Transfers during the Litigation, both before and after agreeing to pay Plaintiff the settlement amounts.

54.     In addition to the above, on or about December 19, 2017, Christopher Hart caused legal title to his residence located at 35 Culloden Park Road, San Rafael, California (the "Culloden Park Property"), valued at approximately $4,000,000, to be transferred to the Marin Academy, a non-profit California corporation.  Plaintiff is informed and believes the Mr. Hart continues to reside at the Culloden Park Property and retains equitable title to the Property.  Plaintiff is further informed and believes that Mr. Hart caused this transfer to occur to with actual intent to hinder, delay, or defraud Plaintiff, who is a creditor of Mr. Hart.

55.     The Transfers of the funds to insiders and entities controlled by the insiders, as listed in **Exhibit I**, constitute a transfer of an interest of FCMC in property.  Defendants Christopher Hart, Dennis Hart, Elizabeth Hart-Armstrong, David Armstrong, Seagull, FCLS, the Hart Family Foundation, DMHFLP, and Tivoli were and/or are immediate, mediate, or subsequent transferees of the Transfers, which are valued at no less than ███████.

56.     Plaintiff was harmed by Defendants' conduct.

57.     Defendants' conduct was a substantial factor in causing Plaintiff's harm.

58.     As a direct and proximate result of the conduct of each Defendant, Plaintiff suffered damages in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**

**Avoidance and Recovery of Constructively Fraudulent Transfers Under Uniform Fraudulent Transfer Act, Civil Code Sections 3439.04(a)(2) and 3439.07 (All Defendants)**

59.     Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 58, inclusive, of this Complaint as if fully set forth herein.

60.     As set forth herein, FCMC promised Plaintiff it would pay $6 million pursuant to the Settlement Agreement and that it would make the ███████ Balloon Payment pursuant to the Amended Settlement Agreement.  FCMC only made the first three payments under the Settlement

-16-

1  Agreement and did not make any further payments.  Instead, FCMC made the Transfers to its

2  insiders and entities controlled by its insiders, including Defendants.

3      61.    FCMC's intent to hinder, delay, or defraud Plaintiff is evidenced by, among other

4  things:

5        (a)    FCMC made the Transfers to insider Defendants Christopher Hart, Dennis

6                Hart, Hart-Armstrong, and David Armstrong, and entities controlled by

7                those insiders, including Defendants Seagull, FCLS, the Hart Family

8                Foundation, DMHFLP, and Tivoli.

9        (b)    FCMC did not disclose and actively concealed the Transfers from Plaintiff

10                until just before it defaulted on its obligation to make the Balloon Payment.

11                In the Amended Settlement Agreement, FCMC affirmatively represented

12                that ████████████████████████████████████

13                ████████████████████████████████████

14                ████████████████████████████████████

15                ████████████████████

16        (c)    FCMC made the Transfers despite the existence of perfected security

17                interests in its assets in favor of Plaintiff.

18        (d)    FCMC did not receive reasonably equivalent value in exchange for the

19                Transfers.

20        (e)    FCMC was insolvent at the time of making the Transfers or became

21                insolvent as a result of the Transfers.

22        (f)    FCMC transferred substantially all of its assets after making the bulk of the

23                Transfers.

24        (g)    FCMC ceased operations and shut down shortly after making the bulk of

25                the Transfers.

26        (h)    FCMC made the Transfers during the Litigation, both before and after

27                agreeing to pay Plaintiff the settlement amounts.

28

COMPLAINT

62.     The Transfers of the funds to insiders and entities controlled by the insiders, as listed in **Exhibit I**, constitute transfers of an interest of FCMC in property. Defendants were and/or are immediate, mediate, or subsequent transferees of the Transfers, which are valued at no less than ███████.

63.     When FCMC transferred the funds to the insiders and entities controlled by the insiders, it did not receive reasonably equivalent value in exchange for the Transfers.

64.     When transferring the funds, (a) FCMC engaged in a transaction, or was about to engage in a transaction, for which its remaining assets were unreasonably small in relation to the transaction, and/or (b) intended to incur, or believed, or reasonably should have been believed it would incur, debts beyond its ability to pay as they became due.

65.     Plaintiff was harmed by Defendants' conduct.

66.     Defendants' conduct was a substantial factor in causing Plaintiff's harm.

67.     As a direct and proximate result of the conduct of each Defendant, Plaintiff suffered damages in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### Intentional Interference with Contract (Individual Defendants)

68.     Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 67, inclusive, of this Complaint as if fully set forth herein.

69.     The Settlement Agreement and Amended Settlement Agreement are valid and enforceable contractual relationships between Plaintiff and FCMC.

70.     The Settlement Agreement and the Amended Settlement Agreement contain provisions requiring payments from FCMC to Plaintiff.

71.     The Amended Settlement Agreement contains a provision ███████████
███████████████████████████████
██████████████████████████
███████████████████████████
████████████████████████████████
███████████████████████

-18-

72.     FCMC failed to pay the amounts it owed to Plaintiff under the Settlement Agreement and the Amended Settlement Agreement.  FCMC also failed to comply with the ████████████████████.

73.     Owing to their positions as managers, owners, and affiliates of closely-held FCMC, and each having approved the Settlement Agreement and Amended Settlement Agreement, each Individual Defendant had actual knowledge of FCMC's obligations under the Settlement Agreement and the Amended Settlement Agreement, including FCMC's ██████████ ██████████████████████████████████████  Despite such knowledge, each Individual Defendant took substantial steps toward consummating the Transfers.

74.     The transactions necessary to effectuate the Transfers substantially disrupted FCMC's ability to perform its obligations to Plaintiff, making it impossible for FCMC to perform its obligations under the Settlement Agreement and the Amended Settlement Agreement.

75.     Each Individual Defendant understood and intended that the transactions necessary to accomplish the Transfers would result in substantial disruption of the rights and benefits afforded to Plaintiff under the Settlement Agreement and the Amended Settlement Agreement or knew that disruption of performance under the Settlement Agreement and the Amended Settlement Agreement was certain or substantially certain to occur.

76.     Plaintiff was harmed.

77.     The Individual Defendants' conduct was a substantial factor in causing Plaintiff's harm.

78.     As a direct and proximate result of the conduct of each Individual Defendant, Plaintiff suffered damages in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**

**Intentional Interference with Prospective Economic Advantage (Individual Defendants)**

79.     Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 78, inclusive, of this Complaint as if fully set forth herein.

-19-

80.     The Settlement Agreement and Amended Settlement Agreement memorialize economic relationships between Plaintiffs and FCMC, with a probability of future economic benefit to FCMC.

81.     The Settlement Agreement and the Amended Settlement Agreement contain provisions requiring payments from FCMC to Plaintiff.

82.     The Amended Settlement Agreement contains a provision ████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████

83.     FCMC failed to pay the amounts it owed to Plaintiff under the Settlement Agreement and the Amended Settlement Agreement.  FCMC also failed to comply with ██ ██████████████████████.

84.     Owing to their positions as managers, owners, and affiliates of Defendant FCMC, and each having approved the Settlement Agreement and Amended Settlement Agreement, each Individual Defendant knew of FCMC's relationship with Plaintiff, including the obligations under the Settlement Agreement and the Amended Settlement Agreement, such as FCMC's ███████ ███████████████████████████████████████████ Despite such knowledge, each Individual Defendant disrupted the relationship by taking substantial steps toward consummating the Transfers.

85.     The transactions necessary to effectuate the Transfers substantially disrupted FCMC's ability to perform its obligations to Plaintiff.

86.     Each Individual Defendant intended to disrupt the relationship between FCMC and Plaintiff and/or knew that the transactions necessary to accomplish the Transfers was certain or substantially certain to result in disruption of the relationship.

87.     The conduct of each Individual Defendant was without privilege and was a substantial factor in disrupting the rights and benefits of Plaintiff and in causing Plaintiff's harm.

88.     Plaintiff was harmed by Individual Defendants' conduct.

89.     As a direct and proximate result of the conduct of each Individual Defendant, Plaintiff suffered damages in an amount to be determined at trial.

**FIFTH CLAIM FOR RELIEF**

**Negligent Interference with Prospective Economic Advantage  (Individual Defendants)**

90.     Plaintiff realleges and incorporates herein by reference the allegations of paragraphs 1 through 89, inclusive, of this Complaint as if fully set forth herein.

91.     The Settlement Agreement and Amended Settlement Agreement memorialize economic relationships between Plaintiffs and FCMC, that probably would have resulted in future economic benefit to FCMC.

92.     The Settlement Agreement and the Amended Settlement Agreement contain provisions requiring payments from FCMC to Plaintiff.

93.     The Amended Settlement Agreement contains a provision ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████

94.     FCMC failed to pay the amounts it owed to Plaintiff under the Settlement Agreement and the Amended Settlement Agreement.  FCMC also failed to comply with ██ ████████████████████

95.     Owing to their positions as managers, owners, and affiliates of Defendant FCMC, and each having approved the Settlement Agreement and Amended Settlement Agreement, each Individual Defendant knew or should have known of FCMC's relationship with Plaintiff, including the obligations under the Settlement Agreement and the Amended Settlement Agreement, such as FCMC's ████████████████████████████████████████████████ ██████████████  Despite such knowledge, each Individual Defendant disrupted the relationship by taking substantial steps toward consummating the Transfers.  Each Individual Defendant was

-21-

1    aware or should have been aware that if he or she did not act with reasonable care, his or her

2    action would interfere with the relationship and cause Plaintiff to lose in whole or in part on the

3    advantage of the relationship.

4    96.    Each Individual Defendant nevertheless failed to act with reasonable care,

5    including by disrupting the rights and benefits of Plaintiff under the Settlement Agreement and

6    Amended Settlement Agreement, making it impossible for FCMC to perform its obligations under

7    those Agreements.

8    97.    The transactions necessary to effectuate the Transfers disrupted FCMC's ability to

9    perform its obligations to Plaintiff.

10   98.    The conduct of each Individual Defendant was without privilege and was a

11   substantial factor in disrupting the rights and benefits of Plaintiff and in causing Plaintiff harm.

12   99.    Plaintiff was harmed by Individual Defendants' conduct.

13   100.   As a direct and proximate result of the conduct of each Individual Defendant,

14   Plaintiff suffered damages in an amount to be determined at trial.

15   ### SIXTH CLAIM FOR RELIEF

16   ### Conversion (All Defendants)

17   101.   Plaintiff realleges and incorporates herein by reference the allegations of

18   paragraphs 1 through 100, inclusive, of this Complaint as if fully set forth herein.

19   102.   By virtue of its valid, perfected, and enforceable lien rights, Plaintiff has a property

20   interest in all of FCMC's assets.

21   103.   Defendants have intentionally and substantially interfered with Plaintiff's property

22   interest by withholding and taking possession of FCMC's assets via the Transfers.

23   104.   Plaintiff did not consent to Defendants' unlawful withholding and taking of

24   FCMC's assets.

25   105.   Plaintiff was harmed by Defendants' unlawful withholding and taking of FCMC's

26   assets.

27   106.   Defendants were a substantial factor in causing Plaintiff's harm.

28

107.     As a direct and proximate result of the conduct of each Defendant, Plaintiff suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, and each of them, jointly and severally, as follows:

a)   Avoidance and recovery of the Transfers set forth in the Complaint and any other transfers made in violation of the California Uniform Fraudulent Transfer Act;

b)   A preliminary injunction and permanent injunction enjoining Defendants and their officers, agents, servants, employees, affiliates, representatives, successors, assigns, heirs, legatees, executors, administrators, estate, and all persons acting in concert with any such persons, during the pendency of this action until all amounts owing to Plaintiff have been paid in full, from directly or indirectly transferring, selling, assigning, pledging, encumbering, hypothecating, or in any way disposing of any of FCMC's assets and any proceeds derived from such assets;

c)   Compensatory and incidental damages in an amount to be proven at trial;

d)   Punitive damages in an amount to be proven at trial;

e)   An award of all costs and attorneys' fees incurred in connection with this action to the maximum extent afforded by law;

f)   An award of pre- and post-judgment interest; and

g)   Any and all such other relief as may be deemed appropriate by the Court.

COMPLAINT

1    DATED:  June 1, 2018                    FINESTONE HAYES LLP

2

3                                            By: *Jennifer C. Hayes*
                                                  Jennifer C. Hayes
4

5

6                                            QUINN EMANUEL URQUHART &
                                             SULLIVAN LLP
7                                            Anthony P. Alden

8                                            Attorneys for Plaintiff ResCap Liquidating
                                             Trust
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-24-