UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESCAP LIQUIDATING TRUST,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>FIRST CALIFORNIA MORTGAGE COMPANY, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-03283-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS AND STRIKE AFFIRMATIVE DEFENSES IN PART AND DENYING IN PART**<br><br>Re: Dkt. No. 45 |

　　　　Plaintiff Rescap Liquidating Trust ("Rescap") moves to strike defendants' counterclaims and several affirmative defenses because they are premised on an interpretation of a settlement agreement release provision that I have already rejected in a previous order. Even if I draw all reasonable inferences favor of defendants, my interpretation of the provision does not change--the release provision is unambiguous. As a result, I dismiss the first three counterclaims for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing with prejudice and strike the affirmative defenses that are based on defendants' contrary interpretation of the release. Defendants' derivative fourth counterclaim for reformation of the settlement agreement is dismissed with leave to amend because it fails to adequately plead demand futility and to plausibly allege how defendants were defrauded into signing the settlement agreement.

　　　　Rescap also moves to strike all allegations regarding confidential settlement communications because they are subject to a mediation order by the Hon. Susan Richard Nelson of the District of Minnesota. Rescap's motion is granted. Defendants must seek authorization from Judge Nelson before they use said confidential settlement communications in their defense.

# BACKGROUND

The Order Denying Motion to Partially Dismiss the Complaint ("MTD Order") [Dkt. No. 41] discusses the background of this lawsuit in detail. What follows is the abridged version.

## I. The Minnesota Litigation

Rescap is suing defendant First California Mortgage Company ("FCMC") for the alleged fraudulent transfer of funds from FCMC so that it could avoid paying Rescap pursuant to an already executed settlement agreement. Complaint [Dkt. No. 17]. It also sues individual defendants Christopher Kamin Hart, Dennis Hart, Elizabeth Hart-Armstrong, and David Armstrong (collectively the "Individual Defendants") who allegedly own, manage, and control FCMC. *Id.* It further asserts that defendants Hart Family Foundation, Seagull Services LLC, First California Lending Solutions, D.M.H. Family Limited Partnership, and Tivoli Asset Management (collectively the "Affiliate Defendants") are affiliates of FCMC and are owned and controlled by the Individual Defendants. *Id.*

Rescap is the successor-in-interest to the now bankrupt Residential Funding Company, LLC ("RFC"), which had purchased over 300 mortgage loans from FCMC and sold them into residential mortgage-backed securitization trusts or to whole loan purchasers. *Id.* at ¶¶ 1, 9, 23-25. The various loans eventually failed and RFC filed for bankruptcy in 2012. *Id.* at ¶ 26. In 2013, RFC brought suit against FCMC in *Residential Funding Company, LLC v. First California Mortgage Company*, No. 13-CV-3453 (D. Minn.) (the "Minnesota Litigation") for breach of contract and indemnification because FCMC breached Rescap's Client Contract and Client Guide, which set out stringent contractual representations and warranties made by FCMC to protect RFC. *Id.* at ¶¶ 2, 24, 28. The Minnesota Litigation ended when Rescap, RFC, and FCMC executed a Settlement and Release Agreement (the "Settlement Agreement"), requiring FCMC to pay Rescap under a defined payment schedule. *Id.* at ¶¶ 2, 29.

FCMC ultimately defaulted on the required payments. In accordance with the Settlement Agreement, Rescap received a Confession of Judgment in its favor for $6,497,500 and statutory post-judgment interest, which it filed in Sonoma County Superior Court. *Id.* at ¶¶ 3, 31-32. The state court entered judgment. In August 2017, the parties entered into the Amendment to

1  Settlement and Release Agreement, requiring that FCMC to make a single lump-sum payment of
2  $6,697,074. *Id.* at ¶¶ 5, 34. FCMC failed to make the payment. *Id.* at ¶ 7.

Rescap alleges that while the Minnesota Litigation was pending and the Settlement Agreement was being negotiated, the Individual Defendants began transferring FCMC's assets to themselves and the Affiliate Defendants in order to prevent FCMC from having to pay its creditors. *Id.* at ¶¶ 3, 6, 42-44. On or around March 7, 2017, FCMC's counsel told Rescap that it had no assets left to pay the amended judgment. *Id.* at ¶ 47.

**II. Rescap's Complaint and Motion to Dismiss**

Rescap filed the instant action in June 2018. [Dkt. No. 1]. Shortly after, defendants moved to partially dismiss the Complaint, arguing that Rescap could not seek funds transferred prior to the date of the Settlement Agreement because of the agreement's release provision, among other things. [Dkt. No. 20]. I denied defendants' motion in its entirety. MTD Order. As it relates to the current motion, I found that the settlement agreement only released defendants from suits based on any violations of the Client Contract and Client Guide and that it did not extend to the alleged fraudulent transfer scheme at the heart of Rescap's complaint. MTD Order at 6-9. I held that the alleged fraudulent transfer scheme is unrelated to any violations of the Client Contract and Client Guide. *Id.*

**III. The Current Motion to Dismiss Counterclaims and Strike Affirmative Defenses**

On July 19, 2018, FCMC filed its answer. [Dkt. No. 18]. On November 15, 2018, the remaining defendants filed their answer stating thirty-three affirmative defenses. Answer at 12-19 [Dkt. No. 42]. Defendants other than FCMC and Tivoli Asset Management next filed counterclaims against Rescap for (1) declaratory relief, (2) breach of contract, (3) breach of implied covenant of good faith and fair dealing, and (4) reformation of the Settlement Agreement. Counterclaims [Dkt. No. 43].

Rescap now moves to dismiss the counterclaims, arguing that the first three are predicated on a meritless interpretation of the Settlement Agreement's release that I have already ruled against. Motion to Dismiss Counterclaims ("Mot.") [Dkt. No. 45]. It also argues that defendants fail to state a claim, that some of the counterclaims are duplicative of the affirmative defenses, and

3

that the fourth counterclaim for reformation is not a proper derivative claim. *Id.* Additionally, it also requests that I strike the affirmative defenses that are based on defendants' interpretation of the Settlement Agreement and that I also strike certain allegations from the Counterclaims and Answers that constitute protected confidential settlement communications. *Id.*

**LEGAL STANDARD**

**I.   MOTION TO DISMISS**

In moving to dismiss counterclaims, "[t]he standards that apply to the complaint apply to the counterclaims as well." *Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. 14-cv-0437-CW, 2016 WL 304764, at *2 (N.D. Cal. Jan. 26, 2016). Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss if a claim fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a claim must be supported by facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

Under Federal Rule of Civil Procedure 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). However, "Rule 9(b) requires only that the circumstances of fraud be stated with particularity; other facts may be pleaded generally, or in accordance with Rule 8." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011).

In deciding a motion to dismiss for failure to state a claim, the court accepts all of the factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). But the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

4

inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## II. MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). In addition, courts often require some showing of prejudice by the moving party before granting a motion to strike. *Hernandez v. Dutch Goose, Inc.*, No. C 13-03537 LB, 2013 WL 5781476, at *5 (N.D. Cal. Oct. 25, 2013).

"If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving an assessment of the sufficiency of the allegations for adjudication on the merits." *Carolina Cas. Ins. Co. v. Oahu Air Conditioning Serv., Inc.*, 994 F. Supp. 2d 1082, 1090-91 (E.D. Cal. 2014). In resolving a motion to strike, I view the pleadings in a light most favorable to the nonmoving party. *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057.

## DISCUSSION

### I. THE SCOPE OF RELEASE PROVISION IN THE SETTLEMENT AGREEMENT AND THE FIRST THREE COUNTERCLAIMS

Rescap moves to dismiss the first three counterclaims for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing because I have already found defendants' interpretation of the release provision to be meritless. Mot. 10-13. It argues that because the released claims relate only to any alleged, or as yet unalleged, violations of the Client Contract or Client Guide, the release does not extend to FCMC's payment obligations under the Settlement Agreement. *Id.*

In opposition, defendants argue that because my previous ruling on the scope of the release

was in the context of their motion to dismiss and required me to draw all reasonable inferences in Rescap's favor, the scope of the release has not been determined for the purposes of this motion. Opposition at 4-6 [Dkt. No. 51]. Defendants suggest that because the inferences are to be construed in their favor on this motion, I am compelled to interpret the Settlement Agreement differently. *Id.* They contend that at the time the parties entered into the Settlement Agreement, the $12 million in pre-settlement transfers from FCMC were subject to avoidance as fraudulent transfers. Therefore, Rescap should have amended its complaint in the Minnesota Litigation or brought a new action seeking to avoid those transfers at that time if it wanted to preserve its claims. *Id.* at 8-9. Defendants argue that the pre-settlement transfers must be covered under the Settlement Agreement's release provision. *Id.*

Defendants are wrong. Under both California and Minnesota law[1], interpretation of an unambiguous contract is a matter of law. *Gen. Cas. Co. of Am. v. Azteca Films, Inc.*, 278 F.2d 161, 168 (9th Cir. 1960) ("Under California law where a written agreement attempts to cover all relationships of the contracting parties, interpretation [is a] a matter of law"); *Boldon v. Messerli & Kramer, P.A.*, No. CIV. 14-2035 DWF/HB, 2015 WL 5039137, at *3 (D. Minn. Aug. 26, 2015) ("Further, the construction and interpretation of an unambiguous contract is a matter of law, and [w]hen the language is clear and unambiguous, [courts] enforce the agreement of the parties as expressed in the language of the contract.")(internal citation and quotation marks omitted). The terms of the Settlement Agreement are clear. The factual allegations contained in the counterclaims and answers do not create any ambiguity that would warrant a different interpretation than I have already provided.

The Settlement Agreement states in relevant part that it was intended to "resolve the Litigation [and to] reach a full and fair compromise resolution of all claims *concerning the Subject Loans*." Settlement Agreement § 1 (emphasis added). The release clause provides that:

> The RFC parties . . . hereby forever release, remise, acquit, stand satisfied and

---

[1] In my prior order I noted that although by its own terms the Settlement Agreement was to be interpreted under Minnesota law, both parties agreed that Minnesota and California law did not meaningfully differ with respect to interpretation of the release and cited only California authority. The parties now cite Minnesota law and I do as well.

6

> forever discharge [FCMC] and, each solely in their capacity as such, its present and former parents, subsidiaries, affiliates, employees, officers, directors agents, representatives, predecessors, heirs, successors, attorneys, insurers and assigns . . . from any and all manner of claims, actions, causes of action, charges, suits, rights, debts, dues, sums of money, accounts, reckonings, bonds, bills, damages, judgments, executions, obligations, attorney's fees, costs, expenses, liabilities, and demands of any kind or nature whatsoever, at law or in equity, which it may have had, ever had, claims to have had, now has or which its Affiliates, employees, officers, directors, agents, representatives, heirs, successors , attorneys, insurers and assigns hereafter can, *shall or may have solely relating to the Subject Loans* (the "Released Claims"); provided, however, that the Released Claims shall not include the obligations and agreements undertaken by Defendant in this Agreement.

Settlement Agreement § 4 (emphasis added). As I held before, "claims related to Subject Loans" refers to claims related to FCMC's alleged violations of the Client Contract and Client Guide when it sold loans to RFC. MTD Order at 6-9. As such, only claims related to violations of the Client Contract and Client Guide have been released under the Settlement Agreement.

This finding is fatal to three of defendants' counterclaims. Defendants' first counterclaim seeks a declaration that "to the extent Rescap's claims for relief under their Complaint herein are based on alleged transfers of assets made by [FCMC] before the parties entered into the September 23, 2016 Settlement Agreement, those claims fall within the scope of the 'Released Claims' contained in the Settlement Agreement and are, therefore, barred by the release of claims in the Settlement Agreement." Counterclaims at 4-6. As stated above, the Settlement Agreement is unambiguous and Rescap's claims for relief based on allegedly fraudulent transfers are not implicated by the release contained in Settlement Agreement. Accordingly, I grant Rescap's motion to dismiss defendants' first counterclaim with prejudice.

Defendants' second and third counterclaims fail as well. The second counterclaim for breach of contract is premised on defendants' allegation that Rescap breached the Settlement Agreement's "release of claims and implied covenant not to sue contained therein by seeking to avoid and/or otherwise to recover claimed damages for alleged payments of funds and/or assets by [FCMC] to Counterclaimants made prior to the . . . Settlement Agreement and the release of claims expressly benefiting the Hart Counterclaimants contained therein." *Id.* at 6-7. Similarly, the third counterclaim for breach of implied covenant of good faith and fair dealing is based on the alleged deprivation of the benefits of the Settlement Agreement and release caused by Rescap

7

when it initiated this lawsuit to recover claimed damages for the allegedly fraudulent transfers. *Id.* at 7-8. Rescap did not breach the Settlement Agreement or the implied covenant of good faith and fair dealing when it filed this suit because the allegedly fraudulent transfers were not implicated in the Agreement's release.

While it is true that I must construe the facts in a light most favorable to the defendants, I cannot construe a contract in a way that would lead to an absurd result: it would be irrational for Rescap to enter into an agreement and simultaneously release any claims for frustration of that agreement. *LTL Commercial, LLC v. Hammer IRP LTL Assocs., LLC*, No. B262176, 2016 WL 4547659, at *12 (Cal. Ct. App. Sept. 1, 2016) ("we must construe contracts to avoid absurd results")(internal citation omitted); *Employers Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn.*, 165 N.W.2d 554, 556 (Minn. 1969) (same). I grant Rescap's motion to dismiss the first three counterclaims. Amendment would be futile as there are no additional factual allegations that might affect my interpretation of the unambiguous Settlement Agreement.

## II. THE FOURTH COUNTERCLAIM FOR REFORMATION OF THE SETTLEMENT AGREEMENT

Rescap moves to dismiss the fourth counterclaim for reformation of the Settlement Agreement, arguing that the defendants Christopher Hart, Dennis Hart, and Elizabeth Armstrong Hart (the "Derivative Counterclaimants") have not shown demand futility. Mot. 17-20. It argues that this is an improper derivative claim because the Derivative Counterclaimants have failed to plead with particularity that they made attempts to secure FCMC board action or the factual basis upon which they believe a demand would have been futile. *Id.* Rescap also asserts that the Derivative Counterclaimants cannot plausibly plead that they were defrauded into signing the Agreement. *Id.*

Derivative Counterclaimants allege that demand would be futile because FCMC "is no longer in business, has no employees and does not have sufficient financial or other means to bring and prosecute this claim in its own name." Counterclaims at ¶ 25. Rescap responds that this allegation lacks the requisite particularity and is contradicted by FCMC's appearance in this suit, FCMC's representation by separate counsel, and FCMC's filing of its Answer and discovery

responses. Mot. at 18. Further, as FCMC is "owned, managed, and controlled by members of the Hart family, including Defendants Dennis Hart, Christopher Hart, Elizabeth Hart, and David Armstrong[,]" Rescap contends that the Derivative Counterclaimants could simply have directed FCMC to bring the reformation counterclaim. *Id.* quoting Defendants' Answer at ¶ 7 [Dkt. No. 42]. In opposition, Derivative Counterclaimants counter that accepting their allegations as true, they have sufficiently pleaded demand futility and that Rescap is actually trying to challenge whether FCMC is insolvent. Oppo. at 21-23.

Under Federal Rule of Civil Procedure 23.1, a shareholder who seeks to bring a derivative suit must either first demand action from the board, or "plead with particularity the reasons why such demand would have been futile." *Rosenbloom v. Pyott*, 765 F.3d 1137, 1148 (9th Cir. 2014) (internal citation omitted). "[T]he substantive law which determines whether demand is, in fact, futile is provided by the state of incorporation of the entity on whose behalf the plaintiff is seeking relief." *Id.* I agree with the parties that in this case California law controls the demand futility analysis. California law follows Delaware law on demand futility. *Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 586 n.5 (2001). Demand is excused as futile where particularized facts are alleged showing doubt that: "(1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984); see also *In re Silicon Graphics Inc. Securities Litigation*, 183 F.3d 970, 990 (9th Cir. 1999), overruled on other grounds.

As an initial matter, I am skeptical that corporate insolvency is an adequate ground upon which to plead demand futility. Absent any cited authority to support Derivative Counterclaimants' theory of futility, it is not clear to me that they have standing to seek reformation of the Settlement Agreement. Further, as Rescap points out, FCMC is represented by counsel, has appeared in this case, and has filed an answer and discovery responses. Although I am required to construe the facts in a light most favorable to the Derivative Counterclaimants, FCMC's participation in this case is properly subject to judicial notice and I "need not ... accept as true allegations that contradict matters properly subject to judicial notice[.]" *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014). Rescap's motion to dismiss the

fourth counterclaim is granted.

Derivative Counterclaimants are given leave to amend their fourth counterclaim; they are encouraged to cite relevant authority that supports a finding of demand futility where the corporation is insolvent. I caution them that, absent persuasive authority, I am not convinced that their theory of futility has merit, and if it does, why it would apply given the judicially noticed facts of FCMC's ongoing involvement in this litigation. As the issue of Derivative Counterclaimants standing has not been resolved, I do not reach the merits of Rescap's motion to dismiss the fourth counterclaim. I will note that the pleading that they were defrauded into signing the Agreement does not appear plausible.

## III. DEFENDANTS' ALLEGATIONS CONCERNING CONFIDENTIAL SETTLEMENT COMMUNICATIONS

As part of the Minnesota Litigation, the parties were ordered to mediate their claims by the court. *In re RFC and ResCap Liquidating Trust Litigation*, No. 13-CV-3451 (D. Minn. May 11, 2016), Dkt. No. 1547. Judge Nelson later issued Pretrial Order No. 16, Protocol for Confidentiality of Mediation and Settlement (the "Mediation Order"), which states in relevant part:

> Confidential Settlement Communications shall be strictly confidential and shall not be admissible for any purpose in any judicial or administrative proceedings, nor used for any purpose other than in connection with the mediation, and no person or party participating in the mediation, including counsel for any mediation party, shall disclose a Confidential Settlement Communication to any non-party to the mediation, or to any court, unless authorized by this Court.

*Id.*, ECF No. 1668 at ¶ 2. It applies to "all mediations or other settlement discussions that have already occurred or will occur in connection with these consolidated proceedings [.]" *Id.* at ¶ 5.

Rescap argues that Judge Nelson has not authorized disclosure of any confidential settlement communications. Accordingly, it moves to strike FCMC's answer [Dkt. No. 18] at 6:2-5, 6:12-16, and 7:3-7 and the remaining defendants' answer [Dkt. No. 42] at 6:19-25 (paragraph 35) and 14:18-23 (all remaining text in paragraph 12 following "Settlement and Release

10

Agreement") for failure to comply with the Mediation Order.[2]

In opposition, defendants make three futile arguments. The first is that the Mediation Order and Settlement Agreement's confidentiality provision, when read together, permit disclosure. Regarding any future settlement agreement, the Mediation Order states in relevant part:

> This Order does not prohibit any party from disclosing that a case has been settled. However, that disclosure is limited to the statement that "the case is settled." The terms of any settlement reached by the parties as a result of the mediation will be strictly confidential until the parties enter into a final settlement agreement and then the confidentiality of the settlement will be treated in accordance with the provisions of the final settlement agreement concerning confidentiality. Those provisions should be clear and detailed and incorporate any instances in which disclosure might be necessary (e.g. securities filings and the like).

Mediation Order at ¶ 3. The Settlement Agreement's confidentiality provision states in relevant part:

> (a) Each Party agrees that this Agreement as well as all documents, communications, drafts and other materials of any kind relating to the negotiation of this Agreement by the Parties that Defendant, on the one hand, and any of the RFC Parties, on the other hand, have provided or shall provide exchange or disclose to the other, shall be "Confidential Information" for purposes of this Agreement.
>
> (b) No party, and no person within the control of a Party (together with the Parties, "Covered Persons"), shall disclose any Confidential Information, except that disclosure of such information shall be permitted in the following limited circumstances: (i) in an action by any Party to enforce this Agreement to the extent reasonably required for the purposes of enforcement; (ii) in response to a court order, subpoena or other demand made in accordance with applicable law; . . . (vi) to enforce rights under this Agreement.

Settlement Agreement at § 7(a)-(b).

Read together, these clauses do not allow for disclosure of confidential settlement communications. Rather, disclosure of the terms of the settlement is allowed in limited instances as defined by the Settlement Agreement. To the extent that defendants suggest that the language of the Settlement Agreement conflicts with Judge Nelson's Mediation Order, the Mediation Order controls.

---

[2] As all four of the counterclaims have already been dismissed, Rescap's motion to strike the portions which allegedly violate the Mediation Order is moot.

Defendants' second argument fares no better. They contend that Minnesota Local Rule 16.5(d) permits disclosure. It states in relevant part that: "A confidential dispute resolution communication must not be disclosed outside the alternative dispute resolution process by anyone without the consent of the party that made the confidential dispute resolution communication." D. Minn. LR 16.5(d). Again, the terms of the Mediation Order supersede defendant's argument: "For the avoidance of doubt, to the extent that any part of this Order shall conflict with Local Rule 16.5(d), the terms and provisions of this Order shall govern." Mediation Order at ¶ 4. There can be no question that this issue was expressly contemplated by Judge Nelson's order. I am baffled that defendants would make this argument.

Defendants' third argument is that Rescap may not put defendants' confidential settlement communications at issue in its complaint and then bar defendants from countering its allegations by invoking the "shield" of mediation privilege. Mot. 10-13. Defendants point to some of the following allegations in the complaint in support of their argument: "This action arises out of a scheme by the individual Defendants to induce Plaintiff to enter into a settlement agreement" that left "FCMC an empty shell unable to satisfy its settlement obligations " and that "[u]nbeknownst to Plaintiff, while the [Minnesota Action] was pending and even while negotiating the Settlement Agreement, the individual Defendants began transferring FCMC's assets to themselves and entities they controlled [.]" Mot. at 12 (citing Complaint at 2). These allegations do not relate to the content of any communications made between the parties. Instead, they describe alleged actions by defendants and that there was a time period during which there were negotiations over the Settlement Agreement. Rescap has not used any confidential settlement communications as a sword.

Judge Nelson rejected a similar argument in another case involving Rescap and a different defendant. *In re RFC & Rescap Liquidating Trust Action*, 2018 WL 4863597 (D. Minn. Oct. 8, 2018). In ruling on a motion in limine where Rescap sought to exclude information regarding confidential mediation communications from being introduced at trial in contravention of a similar mediation order, Judge Nelson held that: "This is not a classic 'sword and shield' case . . . where one party sought to introduce into evidence confidential materials from a mediation session while

12

at the same time barring any discovery into those same materials. . . . Here, not only did a court block access to confidential materials, but ResCap is not attempting to introduce confidential mediation materials into evidence." *Id.* at *8. In this case, Rescap has not revealed any confidential settlement communications in its pleadings and the sword/shield doctrine is similarly inapplicable.

Should defendants seek to use confidential settlement communications in their defense, there exists a simple solution: comply with the terms of the Mediation Order and seek authorization from Judge Nelson. Defendants are cautioned that if they seek to amend their fourth counterclaim, their amendments must be consistent with this order and the Mediation Order.

IV. **THE AFFIRMATIVE DEFENSES**

Rescap moves to strike affirmative defenses that are based, at least in part, on defendants' twice rejected interpretation of the Settlement Agreement's release provision, including FCMC's Estoppel (FCMC's Answer at 5:11-14); Assumption of Risk (*id.* at 7:16-19); Unclean Hands (*id.* at 8:18-22); Waiver and Release by Conduct (*id.* at 9:8-11); and Prior Release of Claims by Contract (*id.* at 10:4-6) affirmative defenses. It also seeks to strike the remaining defendants affirmative defenses for Waiver and Release (Defendants' Answer at 13:6-11); Unclean Hands (*id.* at 14:13-23); Release (*id.* at 16-22-26); Breach of Contract (*id.* at 17:1-5); and Fraud (*id.* at 17:6-11). Mot at 22-23. In opposition, defendants contend that their interpretation of the Settlement Agreement compels me to deny the motion.[3] Oppo. at 23-24.

I have already rejected defendants' interpretation as a matter of law. I grant Rescap's motion to strike FCMC's second affirmative defense for estoppel, seventh affirmative defense for assumption of risk, tenth affirmative defense for unclean hands, eleventh affirmative defense for

---

[3] Defendants also argue that the motion to strike is untimely under Federal Rule of Civil Procedure 12(f)(2). Oppo. at 23-24. However, many courts have held that "a party has the right to challenge the legal sufficiency of a defense at any time and therefore a court can consider the merits of an untimely motion to strike." *United States v. Wang*, 404 F. Supp. 2d 1155, 1157 (N.D. Cal. 2005) (internal quotation marks omitted). Defendants also argue that I may not apply my previous interpretation to adjudicate their "yet unpleaded counterclaims and defenses," without providing them "an opportunity to at least submit a written memorandum in opposition to such motion[.]" *Id.* at 6. (quoting *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981). They are wrong again. They have submitted multiple briefings concerning their interpretation of the Settlement Agreement. Insofar as the affirmative defenses rest on their rejected interpretation, the motion to strike is ripe.

waiver and release by conduct, and twelfth affirmative defense for prior release of claims by contract insofar as each of these defenses rely on an interpretation of the Settlement Agreement that is contrary to this order or my previous order interpreting the Settlement Agreement. With respect to the remaining defendants' affirmative defenses, I strike their seventh affirmative defense for waiver and release, twelfth affirmative defense for unclean hands, and twenty fifth affirmative defense for fraud in the same manner as above. The twenty third affirmative defense for release and the twenty fourth affirmative defense for breach of contract are also struck in their entirety because they are wholly contravened by my interpretation of the Settlement Agreement.

Rescap also asks me to strike the affirmative defenses for retraxit, merger, res judicata, lack of consideration, failure of consideration, lack of mutual assent, mistake, rescission, reformation, and frustration of purpose. Its motion to strike these affirmative defenses is denied as premature. Unlike the scope of the Settlement Agreement, I do not consider these affirmative defenses to be fully briefed by the parties and I leave an assessment of the sufficiency of the allegations for adjudication on the merits. *Carolina Cas. Ins. Co.*, 994 F. Supp. 2d at 1090-91.

## CONCLUSION

The first, second, and third counterclaims are dismissed with prejudice. The fourth counterclaim is dismissed with leave to amend within ten days of the date below.

I strike FCMC's answer [Dkt. No. 18] at 6:2-5, 6:12-16, and 7:3-7 and the remaining defendants' answer [Dkt. No. 42] at 6:19-25 (paragraph 35) and 14:18-23 (all remaining text in paragraph 12 following "Settlement and Release Agreement"). These portions of both answers violate Judge Nelson's Mediation Order. Should defendants wish to use confidential settlement communications in this litigation, they must obtain an order from Judge Nelson allowing them to do so.

I also strike FCMC's second affirmative defense for estoppel, seventh affirmative defense for assumption of risk, tenth affirmative defense for unclean hands, eleventh affirmative defense for waiver and release by conduct, and twelfth affirmative defense for prior release of claims by contract insofar as each of these defenses rely on an interpretation of the Settlement Agreement that is contrary to this order or my previous order interpreting the Settlement Agreement. The

14

remaining defendants' seventh affirmative defense for waiver and release, twelfth affirmative defense for unclean hands, and twenty fifth affirmative defense for fraud are struck in the same manner. The remaining defendants' twenty third affirmative defense for release and the twenty fourth affirmative defense for breach of contract are struck in their entirety.

**IT IS SO ORDERED.**

Dated: January 31, 2019

William H. Orrick
United States District Judge